## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIA B. GIOVANETTI, | : | Civil No. 1:17-CV-01787 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, DEPARTMENT OF | : | |
| CORRECTIONS, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

This is an employment discrimination case in which Plaintiff Julia B.

Giovanetti ("Giovanetti") alleges that she was discriminated against on the basis of

her race and national origin.  Before the court is Defendants' motion for summary

judgment.  For the reasons that follow, the motion is granted.

### BACKGROUND AND PROCEDURAL HISTORY

Giovanetti, a former employee of the Pennsylvania Department of

Corrections ("DOC"), initiated this case by filing a complaint on October 2, 2017.

(Doc. 1.)  In the complaint, Giovanetti, who is a Latina woman, alleges that she

was discriminated against on the basis of her race and national origin in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and Pennsylvania's

Human Relations Act ("PHRA").  (*Id.*)  Giovanetti's allegations of discrimination

are based on actions by her direct supervisor, Thomas Achey ("Achey").  (*Id.*)  The

complaint names as Defendants the DOC and its Secretary, John E. Wetzel.  (*Id.* ¶¶

1

7–8.)  Defendants answered the complaint on January 24, 2018.  (Doc. 9.)  The case was reassigned to the undersigned pursuant to a verbal order on November 18, 2019.

Following the close of fact discovery, Defendants filed the instant motion for summary judgment along with a supporting brief and a statement of facts on January 24, 2020.  (Docs. 24–26.)  Giovanetti filed a brief in opposition to the motion on March 24, 2020, *see* Doc. 31, but did not file a statement of material facts in response to Defendants' statement as required by Local Rule 56.1. Defendants filed a reply brief in support of the motion on March 31, 2020.  (Doc. 32.)  With briefing on the motion having concluded, it is now ripe for the court's resolution.

## UNDISPUTED MATERIAL FACTS

Under Local Rule 56.1, a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  M.D. Pa. L.R. 56.1.  The party opposing the motion for summary judgment must file "a separate, short and concise statement of the material facts responding to the numbered paragraphs" in the movant's statement "as to which it is contended that there exists a genuine issue to be tried."  *Id.*

The facts in a movant's statement of material facts are deemed admitted if the non-movant fails to file a statement in response to the movant's statement.  *See id.* ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); *Landmesser v. Hazleton Area Sch. Dist.*, 982 F. Supp. 2d 408, 413 (M.D. Pa. 2013) (deeming facts admitted under Local Rule 56.1); *see also Conn v. Bull*, 307 F. App'x 631, 633 (3d Cir. 2009) (upholding district court's decision to deem facts admitted under Local Rule 56.1.).

In this case, Defendants filed a statement of material facts as required by Local Rule 56.1, *see* Doc. 25, but Giovanetti did not file a response.  Accordingly, the facts in Defendants' statement of material facts are deemed admitted.  The facts in this section are derived from that statement.

Giovanetti began working for the DOC as a Corrections Activity Specialist at SCI Coal Township in 1994.  (Doc. 25 ¶ 1.)  She was promoted to Corrections Counselor I in April 1995 and Corrections Counselor II in February 1996.  (*Id.* ¶¶ 2–3.)  She was then promoted again, to the position of Unit Manager at SCI Chester, in 2000.  (*Id.* ¶ 4.)  In December 2004, Giovanetti took a voluntary demotion to the position of Corrections Counselor at the Community Corrections Center in Harrisburg, Pennsylvania.  (*Id.* ¶ 5.)  She remained in that position until retiring from the DOC in 2016, and was the only Latina counselor at the

Community Corrections Center during that period.  (*Id.* ¶¶ 6–7, 38.)  She has only

sought one other position since retiring from the DOC—a retail job at Pier One

Imports, Inc.—which she ultimately turned down because she "didn't feel

comfortable working with people."  (*Id.* ¶¶ 8–9.)

Achey became the director of the Community Corrections Center during the

time in which Giovanetti was working at that location, in either 2011 or 2012.  (*Id.*

¶ 10.)  As the director, Achey was Giovanetti's direct supervisor.  (*Id.* ¶ 11.)

Shortly after becoming director, Achey gave Giovanetti a negative performance

evaluation, which he changed to satisfactory after Giovanetti questioned the rating.

(*Id.* ¶ 30.)

Giovanetti's office was moved at least three times during her time at the

Community Corrections Center, each time in response to a shift in her case load.

(*Id.* ¶¶ 31–32.)  Other counselors in the Community Corrections Center similarly

had their offices moved when their case loads shifted.  (*Id.* ¶ 33.)  Although Achey

was one of the supervisors who moved Giovanetti's office, he was not the first one

of her supervisors to do so.  (*Id.* ¶ 35.)

On one occasion when she worked at the Community Corrections Center,

Giovanetti was written up for leaving the security station prior to being cleared,

leaving her keys unattended on a table, and not properly signing into the facility

using the fingerprint scanning system.  (*Id.* ¶ 36.)  She was also counseled for

leaving her post without authorization in March 2014. (*Id.* ¶ 37.) During Giovanetti's six-month interim review in April 2014, Achey spoke with her about his perception that she was withdrawn and that she frequently closed her office door for extended periods. (*Id.* ¶ 39.)

Giovanetti's hours while working as a counselor were governed by a collective bargaining agreement that limited the work week to 40 hours. (*Id.* ¶ 41.) Achey accordingly informed all counselors at the Community Corrections Center that they were not permitted to work more than 40 hours in a week. (*Id.* ¶ 42.) Giovanetti told Achey that she was working more than 40-hour weeks during her six-month evaluation, and Achey told her that she should not be doing that. (*Id.* ¶¶ 44–45.)

Giovanetti did not experience any salary decrease, reduction in benefits, reduction in pension, or involuntary demotion during the time in which Achey was her direct supervisor or at any other time during her employment with the DOC. (*Id.* ¶¶ 12–15.) She retired from the DOC in December 2016 and received a full pension at that time. (*Id.* ¶¶ 47–48.)

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States, and 28 U.S.C. § 1367, which

gives district courts supplemental jurisdiction over state law claims that are so closely related to federal claims as to be part of the same case or controversy.

### STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "'A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case.'" *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the

court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [her] pleadings' but instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the

7

non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[1]  42 U.S.C. § 2000e-2(a)(1).  Here, because Giovanetti's claim is based on circumstantial evidence of discrimination, it is governed by the *McDonnell Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The *McDonnell Douglas* framework contains three steps.  At the first step, the plaintiff must establish a prima facie case of discrimination.  *Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).  If the plaintiff meets that burden, the burden of production shifts to the defendants to offer a legitimate nondiscriminatory reason for the adverse treatment of the plaintiff.  *Id.*  The burden then shifts back to the plaintiff to show that the proffered nondiscriminatory reason was a pretext for discrimination.  *Id.* at 427.

---

[1] The substantive standards for a discrimination claim are the same under Title VII, § 1981, and the PHRA.  *E.g.*, *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 409 (3d Cir. 1999) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)); *Pedro v. City Fitness, LLC*, 803 F. App'x 647, 651 n.5 (3d Cir. 2020).  The court accordingly analyzes all three claims together.

To establish a prima facie case of discrimination at the first step of the *McDonnell Douglas* framework, a plaintiff must show (1) that she is a member of a protected class, (2) that she was qualified for the position she had, (3) that she suffered an adverse employment action, and (4) that "the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (quoting *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)).  At the summary judgment stage, the plaintiff's burden is to show that there is sufficient evidence "to convince a reasonable factfinder to find all of the elements of the prima facie case." *Burton*, 707 F.3d at 426 (quoting *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001)).

Defendants argue that they are entitled to summary judgment because Giovanetti did not suffer an adverse employment action and because there is no evidence that she was treated differently because of her race or national origin. (Doc. 26 at 7–11.)

Giovanetti argues that summary judgment is inappropriate because she was treated differently from her non-Latina coworkers.  (Doc. 31 at 2–7.)  She also argues that she experienced a hostile work environment while employed by the DOC.  (*Id.* at 5.)  Finally, she argues that the court should rely on the fact that the

Pennsylvania Human Relations Commission ("PHRC") investigated her claims and found probable cause for a finding of discrimination.  (*Id.* at 7.)

In their reply brief, Defendants argue that they are entitled to summary judgment as to any hostile work environment claim because Giovanetti did not raise a hostile work environment claim in her complaint.  (Doc. 32 at 3.) Defendants further argue that the court is not bound by any findings from the PHRC and that no evidence in the record supports the PHRC's finding of probable cause.  (*Id.* at 3–5.)  Finally, Defendants argue that summary judgment is appropriate because Giovanetti has not produced any evidence to support her discrimination claims.  (*Id.* at 5.)

The court finds that Defendants are entitled to summary judgment because there is no evidence in the record that Giovanetti suffered an adverse employment action.  To establish an adverse employment action, a plaintiff "must show 'an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"  *Komis v. Sec'y of U.S. Dep't of Labor*, 918 F.3d 289, 292 (3d Cir. 2019) (quoting *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015)).

Giovanetti's discrimination claims in this case are based on two verbal reprimands by Achey and one negative performance evaluation.  (*See* Doc. 1 ¶¶ 11–13.)  Verbal and written reprimands, however, are insufficient to establish an

adverse employment action unless a plaintiff can establish that the reprimands "affected the terms or conditions of [her] employment." *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001), *abrogated in non-relevant part by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59–67 (2006).  Here, Giovanetti has not produced any evidence as to how Achey's verbal reprimands and negative performance evaluation affected the terms or conditions of her employment.  She has therefore failed to produce sufficient evidence for a reasonable finder of fact to conclude that she suffered an adverse employment action.

Furthermore, even assuming that Giovanetti suffered an adverse employment action, her claims still fail because there is no evidence that the adverse employment action "occurred under circumstances that could give rise to an inference of intentional discrimination." *Mandel*, 706 F.3d at 169.  Simply put, there is no evidence that Giovanetti was discriminated against on the basis of her race or national origin.  Although Giovanetti alleges that she was treated differently from other employees on the basis of her race and national origin and argues the same in her summary judgment briefing, *see* Docs. 1, 31, she has not produced any evidence to back up such an assertion.  The only evidence on which Giovanetti relies in her summary judgment briefing is a series of quotes from her deposition, none of which support the conclusion that she was treated differently because of her race or national origin.  (*See* Doc. 31 at 2–5.)  Giovanetti's

summary judgment argument is therefore based solely on the allegations of her complaint and conclusory unsupported arguments in her brief that she was treated differently because of her race and national origin.  This is not sufficient to defeat Defendants' summary judgment motion.  *See Jutrowski*, 904 F.3d at 288–89 (noting that a party opposing summary judgment "'may not rest upon the mere allegations or denials of [her] pleadings' but instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'").

Defendants are also entitled to summary judgment as to any hostile work environment claim because Giovanetti did not raise a hostile work environment claim in her complaint.  (*See* Doc. 1.)  A complaint must give defendants "fair notice" of what claims a plaintiff is raising against the defendants and the grounds upon which the claims rest.  *Carpenters Health v. Mgmt. Res. Sys. Inc.*, 837 F.3d 378, 384 (3d Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The complaint's failure to do so here means that Defendants are entitled to summary judgment as to any hostile work environment claim.

Finally, to the extent that Giovanetti relies on the PHRC's finding of probable cause to support her claims, *see* Doc. 31 at 1, 7, the court rejects this argument.  To begin with, the court is not bound in any way to follow the findings of the PHRC.  *See James v. Tri-Way Metalworkers, Inc.*, 189 F. Supp. 3d 422, 432

(M.D. Pa. 2016) (noting that a district court analyzing an employment

discrimination summary judgment motion is not required to give PHRC findings

"any preclusive effect" and that PHRC findings are not "entitled to any deference"

by a district court (citing *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 796 (1986))).

Additionally, because the PHRC's probable cause determination is an out-of-court

statement that Giovanetti would apparently offer for the truth of the matter

asserted—i.e., that there was probable cause to believe that Defendants

discriminated against her—it would likely constitute inadmissible hearsay. *See*

Fed. R. Evid. 801, 802; *James*, 189 F. Supp. 3d at 433 (finding that PHRC

probable cause determination constituted inadmissible hearsay that could not be

considered at the summary judgment stage).

Furthermore, even assuming that the PHRC's probable cause determination

could be of any value to a fact finder, it would still be insufficient to defeat

Defendants' summary judgment motion because a PHRC probable cause

determination is "merely the result of a preliminary investigation" and "does not

contain findings of fact such as would have been made by an impartial adjudicator

in an adversarial proceeding." *James*, 189 F. Supp. 3d at 432. Thus, while a

probable cause determination might support the conclusion that an employment

discrimination claim should survive a motion to dismiss, it is not sufficient at the

summary judgment stage where a plaintiff must present evidence to support her claims.  *See Celotex*, 477 U.S. at 323.

Finally, the contents of the PHRC's probable cause determination are insufficient to defeat Defendants' summary judgment motion.  The PHRC determined that there was probable cause to support Giovanetti's claims of discrimination and that evidence of that discrimination might exist.  (*See* Doc. 1-3.) As Defendants correctly point out, however, Giovanetti never placed any of that evidence into the record of this case.  (*See* Doc. 32 at 4.)  The court is therefore left with a state agency's likely inadmissible determination that probable cause existed based on its preliminary investigation of evidence that has not been presented to this court.  This is not sufficient evidence for Giovanetti's claims to go to trial.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: August 21, 2020

14